**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

MYRNA FIRESTONE,     )
   **Plaintiff,**    )
         )
  **v.**       )   **Case No. 1:06cv1168**
         )
LEWIS S. WILEY, et al.,    )
   **Defendants.**   )

**<u>MEMORANDUM OPINION</u>**

Plaintiff, Myrna Firestone, was a one-fifth owner of Middleburg Training Center, Inc. ("MTC"), a Virginia corporation that operated a horse farm in scenic Loudon County, Virginia. When MTC's other shareholders voted to sell MTC's assets, plaintiff objected on the ground that the sale price, in her view, was well below the fair market value. The sale nonetheless went forward and plaintiff is currently litigating her appraisal rights in a Virginia state court, as required the applicable provisions of the Virginia Stock Corporation Act ("VSCA").[1] Yet, appraisal rights are not the sole remedy plaintiff seeks; in addition, in this diversity action, she asserts a number of state law personal and shareholder derivative claims against MTC and her former fellow MTC shareholders. Defendants collectively moved for dismissal of all claims and, as the motion has been fully briefed and argued, it is now ripe for disposition. For the reasons stated herein, all of plaintiff's claims fail at the threshold.

---

[1] Plaintiff failed in her effort to litigate her appraisal rights in federal court, as the matter was remanded to state court. *See Middleburg Training Center, Inc. v. Firestone*, No. 07cv37 (E.D. Va. Mar. 6, 2007) (Order); *Middleburg Training Center, Inc. v. Firestone*, __ F. Supp. 2d __, No. 07cv37, 2007 U.S. Dist. LEXIS 16086 (E.D. Va. Mar. 6, 2007) (Memorandum Opinion) [hereinafter *Middleburg*].

**I.**[2]

Plaintiff, Myrna Firestone, a citizen of Washington, D.C., purchased one share of MTC in May 1987, which, at all times relevant here, represented a 20% interest in MTC.  In addition, throughout this period plaintiff served as a member of MTC's Board of Directors.  She sues here MTC, a Virginia corporation, and each of the other four MTC shareholders, namely (i) Lewis S. Wiley, a Virginia citizen, and president, director, and shareholder of MTC; (ii) Eve D. Fout, a Virginia citizen, and secretary-treasurer, director, and shareholder of MTC; (iii) Barbara C. Graham, a Virginia citizen, and vice president, director, and shareholder of MTC; and (iv) James W. Murphy, a Virginia citizen, and director and shareholder of MTC.

MTC was incorporated in 1975 for the purpose of operating a horse farm.  Its principal assets were approximately 149.5 acres of land in Loudon County, Virginia, which included horse farm-related improvements and farm-related personal property.  Plaintiff alleges that in 1999, Wiley caused MTC's real property to be included in the "Middleburg West" Agricultural and Forestal District, thus subjecting the property to development restrictions through July 2009, and thereby diminishing MTC's fair market value.

Beginning at least as early as 2003, MTC's directors and shareholders considered selling either MTC's assets, or alternatively, their shares in MTC.  At that time, plaintiff alleges that she personally paid for an appraisal that valued MTC's real property at approximately $7 million.  Thereafter, on December 4, 2003, MTC obtained an appraisal that valued MTC's real property at $5.35 million.

---

[2]As settled law requires, the facts recited herein are derived from plaintiff's amended complaint and construed in the light most favorable to plaintiff.  *See Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989).

MTC continued to consider a sale of its real property through 2006.  In particular, in February 2006, the Board and shareholders declined a contingent offer to purchase the MTC Training Center for $3,250,000.00 and in May 2006, the Board and shareholders declined Wiley's offer to purchase MTC's shares at $700,000 per share.  Also in May 2006, plaintiff alleges that Wiley received an appraisal of MTC's real property valuing it at $6,684,890.  A week after this appraisal was received, another local realtor advised MTC that the MTC Training Center should be priced in the range between $4.3 and $4.5 million.  Plaintiff alleges that following receipt of this appraisal, MTC paid the realtor a $200,000 fee "for acting as the agent of the buyer and MTC," and that Wiley's wife was the realtor's employee or agent.

Approximately two weeks later, on July 18, 2006, MTC held a special shareholders' meeting to consider an offer by Randolph D. Rouse to purchase MTC's assets for $4 million. Plaintiff opposed the sale, arguing (i) that the price was too low and (ii) that, for tax purposes, a sale of stock was preferable to a sale of assets.  Instead of accepting the Rouse offer, plaintiff suggested engaging a realtor to sell MTC's stock for $6.7 million, an amount based on the appraisal sent to Wiley.  The Board did not accept plaintiff's suggestion.  Accordingly, on July 28, 2006, plaintiff notified MTC of her intent to exercise her appraisal rights and to demand payment of the fair value of her 20% share in the event the Rouse asset sale was approved by the Board of Directors.

On that same day, July 28, 2006, the Board of Director's held a meeting, with plaintiff present, to consider Rouse's offer.  During the meeting, Wiley presented a professional appraisal valuing MTC's real estate at $4.35 million.  Additionally, Wiley noticed a special meeting of MTC's directors and shareholders for August 7, 2006 to act on Rouse's offer, stating:

Since consummation of the Purchase Contract would leave Middleburg Training Center,

Inc. without a significant continuing business activity, you as a shareholder are entitled to vote on the proposed Purchase Contract and also are entitled to appraisal rights pursuant to Article 15 of the Virginia Stock Corporation Act, § 13.1-729, *et seq.* of the Code of Virginia . . . .

In response, plaintiff again notified Wiley of her intent to exercise her appraisal rights in the event the proposed sale was approved. In addition, plaintiff then obtained an update of the December 4, 2003 appraisal of MTC's real property, which valued the property at $7 million. Plaintiff stated she did so "[u]sing her own funds to ascertain that her opposition to the Rouse sale was justified . . . ."

At the August 7, 2006 meeting, the sale of MTC's assets to Rouse was approved with Firestone as the only dissenting director or shareholder. Two days later, Wiley informed the shareholders that the sale was complete and that MTC would receive net proceeds of $3,760,942.00,[3] minus any federal corporate income taxes.

On August 17, 2006, MTC mailed plaintiff an appraisal notice, as required by Va. Code § 13.1-734.[4] Because this appraisal notice omitted information required by the statute, MTC mailed plaintiff an amended appraisal notice on October 6, 2006, resolving most, if not all, of the deficiencies of the earlier notice and stating that MTC had determined the estimated value of plaintiff 's share to be $563,477.00.[5] The amended notice further stated that plaintiff was required to complete and return the appraisal form by November 15, 2006, certifying (i) that she owned a share in MTC and (ii) that she desired to seek appraisal rights. Plaintiff returned the appraisal form

---

[3]This figure presumably reflects the difference between the $4 million sale price and the fees and costs associated with the sale.

[4]This provision requires a corporation to deliver to a dissenting shareholder a written appraisal notice and form within 10 days of a corporate action entitling a shareholder to appraisal rights.

[5]It is worth noting that MTC elected to calculate the value of plaintiff 's share based on the $4.35 million figure in MTC's appraisal, rather than on the actual $4 million sales price.

4

on October 17, 2006, providing the requested information and notifying MTC that she believed the

estimated valuation of her share was inadequate.   On October 16, 2006, one day before returning

her appraisal form, plaintiff filed the instant civil action alleging nine claims against MTC and its

directors and shareholders.   Specifically, plaintiff's amended complaint asserts the following nine

claims:

    (i)       Count I: seeking declaratory judgment as to her appraisal rights;

    (ii)      Count II: seeking declaratory judgment as to the proposed dissolution of MTC;

    (iii)     Counts III and IV: asserting derivative and personal claims for breach of fiduciary duties;

    (iv)     Count V: asserting a derivative claim for waste of MTC's assets;

    (v)      Counts VI and VII: asserting derivative and personal claims for civil conspiracy;

    (vi)     Count VIII: asserting a personal claim for unjust enrichment; and

    (vii)    Count IX: seeking declaratory judgment regarding inspection of MTC's books and records.

Each of these claims is separately addressed.

## II.

### A. Count I

In Count I, plaintiff seeks a declaratory judgment as to her appraisal rights and the fair

value of her share in MTC.   As plaintiff's counsel conceded in oral argument, the remedy sought in

this claim, namely the valuation of plaintiff's share, is the same remedy sought in the appraisal

proceeding recently remanded to the Circuit Court of Loudon County, Virginia.   Significantly, the

basis for the remand was the conclusion that the state court has exclusive jurisdiction over

plaintiff's appraisal remedy.  *See Middleburg*, 2007 U.S. Dist. LEXIS 16086 (holding that when

plaintiff purchased her MTC stock, she is deemed to have agreed to VSCA provision Va. Code §

13.7-740 requiring litigation of appraisal rights in the appropriate state court).  Given this, Count I must be dismissed.

## B. Count II

In Count II, plaintiff seeks a second declaratory judgment, this one declaring that MTC may not distribute its assets upon dissolution until plaintiff's appraisal proceeding is concluded.  In essence, plaintiff argues that *if* MTC's dissolution is approved by its shareholders and MTC proceeds to distribute its assets, sufficient funds may not remain to compensate her for the damages she proves in the appraisal rights proceeding.  Thus, plaintiff seeks a declaratory judgment enjoining any distribution of assets until the fair value of her share is ascertained in the state court proceeding and it is clear that MTC has sufficient assets to make the required payment to plaintiff.

This claim fails jurisdictionally because the Declaratory Judgment Act, 28 U.S.C. § 2201, is not a jurisdictional grant.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).  Instead, its purpose is to allow federal courts to issue a declaratory judgment only in cases that (i) meet the constitutional "case or controversy" requirement and (ii) present a valid basis for subject matter jurisdiction.  *Dunn Computer Corp. v. Loudcloud, Inc.*, 133 F. Supp. 2d 823, 826 (E.D. Va. 2001).  And, importantly, "even where a request for a declaratory judgment meets both of these requirements, the exercise of declaratory judgment jurisdiction rests within the sound discretion of the district court."  *Id.*

In this case, plaintiff's claim fails to satisfy the first requirement, namely the presence of a case or controversy.  The facts alleged do not show a controversy "of sufficient immediacy and reality to warrant issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).  Here, plaintiff cannot show the requisite "immediacy" because (i) MTC's corporate dissolution has not been approved by its shareholders, (ii) MTC's assets are not

currently being distributed to shareholders, and (iii) on this record there is no reason to believe that MTC's liability to plaintiff, if any, will exceed its assets. Where, as here, a declaratory judgment request rests entirely on speculation and conjecture, there is no "sufficient immediacy" to warrant a discretionary grant of declaratory relief. *See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998) (noting that declaratory judgment jurisdiction should not be exercised when the declaratory relief sought is premature). Accordingly, Count II must be dismissed.

### C. Counts III, V, and VI

In Counts III, V, and VI, plaintiff asserts shareholder derivative claims: Count III for breach of fiduciary duties by the individual defendants; Count V for waste of MTC's assets; and, Count VI for civil conspiracy. All of these shareholder derivative claims fail at the threshold.

The VSCA provides that "*a shareholder* may not commence or *maintain* a derivative proceeding unless the shareholder . . . [*w*]*as a shareholder* of the corporation at the time of the act or commission complained of" and "[*a*] *written demand has been made* on the corporation to take suitable action." Va. Code 13.1-672.1.A-B (emphasis added). Thus, to maintain a derivative action a plaintiff must satisfy three requirements: (i) she must currently be a shareholder, (ii) she must have been a shareholder at time of the act complained of, and (iii) there must have been a written demand on the corporation. Plaintiff's claim fails because she does not satisfy the first or third requirement.

To begin with, plaintiff cannot maintain these shareholder derivative claims because she is no longer a shareholder of MTC. The centrality of shareholder status to derivative actions is obvious: Only a shareholder may sue on the corporation's behalf, and, as the VSCA provides, once a shareholder returns an executed appraisal form or surrenders her shares, "the shareholder loses all

7

rights as a shareholder." Va. Code 13.1-751.A. Indeed, it is a well-recognized axiom of private corporation law in Virginia and elsewhere[6] that "a shareholder who has elected to pursue his or her appraisal rights cannot later maintain a derivative action on behalf of the corporation." Fletcher's *Cyclopedia of the Law of Private Corporations* § 5906.110 (2006). And, as Fletcher's further notes, "[t]his is because the effect of the appraisal action is to convert the person from a shareholder into a creditor," *id.*, and a creditor, of course, is adverse to the debtor corporation and may not sue on the corporation's behalf.

In this case, plaintiff concedes, as she must, that she "lost her status as a shareholder [in] mid-November, 2006." Given this, it follows that she cannot maintain any shareholder derivative claims against MTC.

Quite apart from this bar to her derivative claims, these claims fail because it is undisputed that she did not make the statutorily-required written demand on MTC. The VSCA specifically provides, without exception, that a shareholder must make a written demand on the corporation prior to initiating a derivative action. Va. Code § 13.1-672.1.B;[7] *see* Goolsby, *Virginia Corporation Law & Practice* § 8.2 (1998) ("[D]emand is required in every case.").

---

[6]Although the Supreme Court of Virginia has not had occasion to address this point, numerous cases from other jurisdictions interpreting statutes essentially similar to the VSCA have found that stock ownership is a requirement for a derivative action. *See e.g.*, *Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir. 1978) (construing similar language in Rule 23.1, Fed. R. Civ. P., to require continuous ownership of shares to maintain a derivative proceeding); *Lewis v. Chiles*, 719 F.2d 1044, 1047 n.1 (9th Cir. 1983) (construing similar language in Rule 23.1, Fed. R. Civ. P., to require "that the plaintiff retain ownership of the stock for the duration of the lawsuit")*; Schupack v. Covelli*, 498 F. Supp. 704, 705 (W.D. Pa. 1980); *Kauffman v. Dreyfus Funds, Inc.*, 434 F.2d 727- 735-36 (3d Cir. 1970); *Metal Tech Corp. v. Metal Tecknique Co.,* 703 P.2d 237, 242 (Or. 1985); *Sauer v. Newhouse*, 26 F. Supp. 326 (D. N.J. 1939); *Malcolm v. Cities Service Co.*, 2 F.R.D. 405, 407 (D. Del. 1942).

[7]In particular, the statute provides that "[n]o shareholder may commence a derivative proceeding until: 1. A written demand has been made on the corporation to take suitable action; and 2. Ninety days have expired from the date the demand was made . . . ."

Although plaintiff concedes she did not make the required demand, she argues that despite the plain statutory language, demand is not required where such demand would be futile.  In support of this argument plaintiff cites federal decisions excusing demand as futile, pursuant to Rule 23.1, Fed. R. Civ. P., which provides that a shareholder bringing a derivative suit must allege any efforts to make a demand on the corporation or "the reasons for the failure to obtain the action or for not making the effort."  The fatal flaw in plaintiff's argument is that it overlooks the Supreme Court's decision in *Kamen v. Kemper Financial Svcs. Inc.*, 500 U.S. 90 (1991), which held that federal courts must apply the demand futility exception provided by the law of the state of incorporation.  500 U.S. at 108.  This sensible result is based on a recognition that "[t]he scope of the demand requirement under state law clearly regulates the allocation of corporate governing powers between the directors and individual shareholders."  *Id*.  Thus, the VSCA's strict demand requirement governs this case.

Despite the VSCA's plain statutory text, plaintiff persists in this argument, citing three Virginia circuit cases that have excused the demand requirement where demand would be futile. *See Schrager v. Isquith*, 69 Va. Cir. 31 (2005); *Coffee Break Café v. Mattison*, 2001 Va. Cir. LEXIS 502 (2001);  *Milstead v. Bradshaw*, 43 Va. Cir. 429 (1997).  These cases are unpersuasive because they rely on cases construing either common law principles or an earlier and very different version of the VSCA.  To begin with, in both *Schrager v. Isquith*, 69 Va. Cir. 31 (2005) and *Coffee Break Café v. Mattison*, 2001 Va. Cir. LEXIS 502 (2001), the state circuit court ignored the plain statutory text and excused the demand requirement by citing to *Liggett v. Roanoke Water Co.*, 126 Va. 22 (1919) and *Mount v. Radford Trust Co.*, 93 Va. 427 (1896), both of which were decided well before Va. Code § 13.1-672 was amended to impose an exceptionless demand rule and both of which relied simply on common law principles of demand futility.  Similarly, the state circuit court

9

in *Milstead v. Bradshaw*, 43 Va. Cir. 429 (1997), excused the demand requirement relying on a federal case that had construed an earlier provision of Va. Code § 13.1-672, which had provided a demand futility exception.[8]  None of these cases provide a persuasive reason to depart from the plain text of the statute, which provides, without exception, that to maintain a derivative action a written demand must be made on the corporation.  Accordingly, as plaintiff did not make a written demand on MTC, as required by Va. Code § 13.1-672, Counts III,[9] V, and VI, must be dismissed on this ground as well.

### D. Count IV

In Count IV, plaintiff asserts a personal claim for breach of fiduciary duties by the individual defendants.  In particular, plaintiff alleges that the defendants breached their fiduciary duties when (i) they "acted to oppress and harass plaintiff and hindered her ability to perform her duties" on the Board; (ii) they did not comply with Virginia law relating to shareholders' rights and appraisal rights; and (iii) Wiley and Fout noticed a Board meeting and shareholder meeting to

---

[8]In particular, before 1992, the predecessor statute to Va. Code § 13.1-672 provided that a plaintiff asserting a derivative claim must allege "*why demand was excused* or that demand was made to obtain action by the board of directors."

[9]Although not decided here, it is worth noting nonetheless that, with respect to Count III, the alleged breaches of fiduciary duties related to the Rouse sale may also be subject to dismissal on yet another ground, namely that a dissenting shareholder challenging a corporate action has only two avenues for relief: (i) asserting appraisal rights or (ii) setting aside the challenged corporate action by alleging fraud or illegality.  *See Adams v. United States Distributing Corp.*, 184 Va. 134, 147 (Va. 1945) (holding that the Virginia Stock Corporations Act requires that unless the corporate action giving rise to appraisal rights "be tainted with fraud or illegality . . . the dissenting stockholder must pursue the remedy prescribed by the appraisal statute"); *U. S. Inspect, Inc. v. McGreevy*, 57 Va. Cir. 511, 516 (Va. Cir. 2000) (explaining that in *Adams* the "Supreme Court held that the statutory remedy set out in the code was the exclusive remedy available to the dissatisfied shareholder"); Fletcher's *Cyclopedia of the Law of Private Corporations* § 2553 (2006) ("Where a statute provides for an appraisal and payment of the value of stock of dissenting shareholders, other relief may be refused where the appraisal statute is construed as providing the exclusive remedy.").  As plaintiff has unequivocally denied that she is attempting to set aside the sale, it appears that her exclusive remedy to challenge the Rouse sale is her statutorily provided appraisal remedy and not the derivative and personal claims asserted here.

dissolve MTC and distribute its assets, "without taking account of MTC's liabilities to [plaintiff]."

This claims fails as a matter of law because the Supreme Court of Virginia has held that "suits for breach of fiduciary duty against officers and directors *must be brought derivatively* on behalf of the corporation and *not as individual shareholder claims*."  *Simmons v. Miller*, 261 Va. 561, 576 (2001) (emphasis added).  And significantly, this is true even where, as here, the plaintiff is a shareholder in a closely held corporation.  *Id.* (rejecting shareholder's claim that Virginia should permit an individual claim for breach of fiduciary duties when the corporation is closely held).  Thus, "Virginia strictly adheres to the derivative-claim rule" and refuses "to create an exception for direct claims in cases of closely held corporations."  *Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 119 (4th Cir. 2004).[10]  It follows then that plaintiff's individual claim for breach of fiduciary duties must be dismissed.

### E. Count VII

In Count VII, plaintiff asserts a personal civil conspiracy claim against the individual shareholders, alleging simply that they "acted in combination with each other with willful and malicious intent to conspire to breach duties owed to MTC."  The most obvious defect is that this Count is explicitly based on breaches of duties "owed to MTC," which, of course, afford plaintiff no basis for asserting a claim.  Indeed, as noted in Parts II.C and II.D *supra*, plaintiff is an MTC creditor, not an MTC shareholder, and accordingly, has no standing to sue for breaches of duties owed to MTC.

---

[10]*See also Gabriel v. Preble*, 396 F.3d 10, 13 (1st Cir. 2005) (noting that "under Virginia law, a shareholder may not directly bring suit against an officer or director for breach of fiduciary duty," instead "Virginia law requires bringing suit as a shareholder derivative action"); *Lexacadia Capital, LLC v. Next Generation Fund, LLC*, 71 Va. Cir. 83, 92 (Va. Cir. 2006) (citing *Simmons* and dismissing count that alleged breach of fiduciary duty on part of corporation's directors because "such a claim cannot be brought [] independently, but rather must be brought as a shareholder derivative suit ").

Nor is this the only defect in this claim, it also fails under settled Virginia conspiracy law. In Virginia, the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff. *Glass v. Glass*, 228 Va. 39, 47 (1984). And importantly, the Supreme Court of Virginia has recently held that "in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*, 639 S.E.2d 182, 189 (2007). This is so because "[t]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Id.* at 190. Thus, where "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Citizens for Fauquier County v. SPR Corp.*, 37 Va. Cir. 44, 50 (1995).[11]

This principle, applied here, compels the conclusion that Count VII must be dismissed. In this Count, plaintiff simply alleges that defendants "acted in combination with each other with willful and malicious intent to conspire to breach duties owed to MTC." As already explained, however, plaintiff has not asserted any viable claim against defendants for breach of fiduciary duties. *See* Part II.C and II.D, *supra*. In these circumstances, where there is no actionable claim for the underlying alleged wrong, plaintiff cannot maintain a claim for civil conspiracy. Accordingly, this claim must be dismissed.

Additionally, even assuming plaintiff had alleged an actionable underlying claim, her civil

---

[11]*See Almy v. Grisham*, 55 Va. Cir. 401, 404 (Va. Cir. 2001) ("[I]f Plaintiff's Motion for Judgment fails to state a particular cause of action, then no conspiracy to commit the corresponding cause of action will survive demurrer."); *R & D 2001, L.L.C. v. Collins*, 2006 Va. Cir. LEXIS 131, at *11 (Va. Cir. 2006) ("In Virginia, there can be no conspiracy to do that which is lawful, even if done maliciously and operates to injure another person or property.").

conspiracy claim would fail because her complaint contains only conclusory or general allegations of conspiracy, which are insufficient to withstand a motion to dismiss. *See Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499-500 (E.D. Va. 2003) (stating to that to survive a motion to dismiss on common law civil conspiracy, plaintiff must plead agreement in more than mere conclusory language because "a conspiracy claim asserted in mere conclusory language is based on inferences that are not fairly or justly drawn from the facts alleged"); *Johnson v. Kaugars*, 14 Va. Cir. 172, 176 (Va. Cir. 1988) ("[I]t is not enough merely to state that a conspiracy took place."). In other words, Virginia requires a plaintiff to allege "some details of time and place and the alleged effect of the conspiracy." *Johnson*, 14 Va. Cir. at 176. Where, as here, there are only vague, conclusory allegations of conspiracy, the claim fails at the threshold. *See Connors v. Real Title Corp.,* 165 F.2d 291, 294 (4th Cir. 1947) (concluding that conclusory allegations of "vicious conspiracy and collaboration" between three named defendants were insufficient). And while an amendment might conceivably remedy this defect, the claim's other defects are not curable.

### F. Count VIII

In Count VIII, plaintiff asserts a personal claim for unjust enrichment against all defendants, alleging specifically that she incurred professional fees and expenses in obtaining the 2006 appraisal for the benefit of defendants. The only factual allegations in the amended complaint regarding the 2006 appraisal are contained in paragraph 38, which states:

> Using her own funds to ascertain that her opposition to the Rouse sale was justified and would benefit MTC and its directors and shareholders, Firestone sought and obtained an updated appraisal from Ruffner, the same firm that provided MTC with an appraisal in 2003, which opined that the fair market value of MTC's real property was $7 million. Moreover, that appraisal did not include the value of the personal property owned by MTC.

Amended Compl. ¶ 38. The amended complaint does not contain any factual allegations asserting that the defendants requested that plaintiff obtain this appraisal or that defendants received,

accepted, or benefitted from this appraisal.  Given this, the claim fails.

In Virginia, a plaintiff alleging unjust enrichment must establish the following elements:

(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.

*Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990).  It is pellucidly clear that plaintiff's bare factual allegations fail to allege the elements of unjust enrichment because (i) she has not alleged that any benefit was conferred on defendants by virtue of her procuring the 2006 appraisal; (ii) she has not alleged that defendants knew of any such conferred benefit; and (iii) she has not alleged that defendants accepted or retained such conferred benefit.[12]  In these circumstances, plaintiff's claim must be dismissed.

### G. Count IX

In Count IX, plaintiff seeks a declaratory judgment regarding the inspection of MTC's books and records.  In particular, plaintiff alleges that MTC improperly denied her access to its corporate books and records, in contravention of  Va. Code § 13.1-771, which provides that a

---

[12]Moreover, even assuming plaintiff's amended complaint were read to imply that the 2006 appraisal was sent to defendants, receipt of the appraisal alone is insufficient to state a claim for unjust enrichment.  *See Eckstone & Assoc. Ltd. v. Keilp*, 1995 Va. Cir. LEXIS 1404, at *3-4 (Va. Cir. 1995) (dismissing unjust enrichment claim because "[o]ne of the requirements for the application of unjust enrichment is that services were accepted by the person sought to be charged, *used and enjoyed* by him or her") (emphasis added); *Kang v. Roof*, 24 Va. Cir. 193, 195-96 (Va. Cir. 1991) (dismissing unjust enrichment counterclaim because "[a] party who fails to show that the receiver experienced enrichment, or appreciated the benefit, is fatal to a claim of unjust enrichment"); *Qualichem Inc. v. Xelera, Inc.,*62 Va. Cir. 179, 183 (Va. Cir. 2003) (dismissing unjust enrichment claim where buyer's "voluntary" payments to third party did "not provide it with any action at law or in equity" against seller); *Park Eldenwood Assocs. v. Firestone Capital Corp.,* 26 Va. Cir. 70, 74 (Va. Cir. 1991) (dismissing unjust enrichment claim because "[w]hen the defendant has derived no right or benefit from the plaintiff, the law will not indulge in the fiction of an implied promise of the defendant to the plaintiff"); Restatement (First) of Restitution § 112 ("A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution . . . .").

14

director or shareholder may demand inspection of corporate books and records.  She seeks a

declaration that she is entitled by law to such an inspection.

To be sure, once plaintiff demanded her appraisal rights, turned in her MTC stock, and

ceased to be a shareholder, she had no inspection right under Va. Code § 13.1-771.  And, assuming

she made an inspection demand prior to this event, her declaratory judgment claim still fails, as her

sole remedy, as defendants correctly note, is under the VSCA, which provides that where a

shareholder alleges that the corporation has not complied with her demand for access to corporate

books and records, the shareholder "may apply to the circuit court in the city or county where the

corporation's principal office is located . . . to permit inspection and copying of the records

demanded."  Va. Code § 13.1-773.  Thus, the VSCA provided a remedy for plaintiff if she

demanded inspection while still a shareholder.  But importantly, the VSCA specifically provides

that such remedy is available in "the circuit court in the city or county where the corporation's

principal office is located."  *Id.*  Because the VSCA is deemed a part of the contract between a

corporation and its shareholders, it follows that when plaintiff acquired her shares of MTC she

agreed to this forum selection provision providing a statutory remedy in the circuit court in the city

or county where the corporation's principal office is located, in accordance with Va. Code § 13.1-

773.  *See Middleburg*, 2007 U.S. Dist. LEXIS 16086.  Given this, even assuming MTC had denied

plaintiff's demand for inspection while plaintiff was an MTC shareholder, there is no jurisdiction

to litigate plaintiff's claim here, and it must be dismissed.

An appropriate Order will issue.

_____/s/_____

Alexandria, Virginia                                   T. S. Ellis, III
May 8, 2007                                            United States District Judge